NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ERIK KHAN,<br><br>    Plaintiff,<br><br>    v.<br><br>RACHEL THOMPSON,<br><br>    Defendant. | No. 25cv1811 (EP) (AME)<br><br>**MEMORANDUM ORDER** |

**PADIN, District Judge**

*Pro se* Plaintiff Erik Khan ("Khan"), a prisoner confined in the Federal Correctional Institution in Fort Dix, New Jersey ("FCI Fort Dix"), allegedly faces an imminent transfer to another facility. Khan now seeks emergency relief to stop the transfer pursuant to Federal Rule of Civil Procedure 65(b). D.E. 1 ("TRO").

Khan claims this "abrupt" transfer is in retaliation for filing a Writ of Habeas Corpus under 28 U.S.C. § 2241 in a related proceeding.[1] *Id.* at 4-5. According to Khan, this retaliatory transfer violates his First Amendment right to petition for redress of grievances. *Id.* at 5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331; *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001). For the reasons explained below, the Court will **GRANT** Khan's TRO.

I.    **LEGAL STANDARD**

"Preliminary injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'" *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *Novartis Consumer Health, Inc. v. Johnson-Merck Consumer Pharms. Co.*,

---

[1] *Erik Khan v. Rachel Thompson*, Case No. 24-9072 (the "Related Proceeding").

290 F.3d 578, 586 (3d Cir. 2002)). The primary purpose of preliminary injunctive relief is "maintenance of the status quo until a decision on the merits of a case is rendered." *Acierno v. New Castle Cty.*, 40 F.3d 645, 647 (3d Cir. 1994). In order to obtain a TRO, the moving party must show:

> (1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted . . . . [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.

*Reilly v. Cnty. of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (quoting *Del. River Auth. v. Transamerican Trailer Transp., Inc.*, 501 F.2d 917, 919-20 (3d Cir. 1974)).

The movant bears the burden of establishing "the threshold for the first two 'most critical' factors . . . . If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.* at 179. A court may issue an injunction to a plaintiff "only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief." *AT&T v. Winback & Conserve Program*, 42 F.3d 1421, 1427 (3d Cir. 1994); *see also P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005) ("The burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate."); *Ferring*, 765 F.3d at 210.

In addition, the Court must also consider the requirements under the Prison Litigation Reform Act ("PLRA") before it can grant injunctive relief to an incarcerated individual. *Planker v. Ricci*, No. 07-2679, 2010 WL 4447281, at *2 (D.N.J. Nov. 1, 2010). The PLRA requires that the injunctive relief: (1) be narrowly drawn; (2) extend no further than necessary to correct the violation of the federal right; and (3) be the least intrusive means necessary to correct the violation of the federal right. 18 U.S.C. § 3626(a)(2). The Court must also give substantial weight to any

adverse impact on public safety or the operation of the criminal justice system that might be caused by the relief. *Id.* Because Plaintiff proceeds *pro se*, the Court construes the TRO liberally, and holds it to a less stringent standard than papers filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## II. ANALYSIS

### A. Likelihood of Success on the Merits

Khan appears to mistakenly argue in his TRO the merits of his underlying habeas petition, rather than the merits of his TRO. *See* TRO at 6-7. As Khan proceeds *pro se*, the Court will liberally consider whether the facts alleged in the TRO suffice to show that Khan would likely succeed on the merits of his retaliation claim described in the TRO.

"To state a claim for retaliation, a prisoner must allege that: (1) he was engaged in constitutionally protected conduct, (2) he suffered some 'adverse action at the hands of prison officials,' and (3) "his constitutionally protected conduct was 'a substantial or motivating factor in the decision' to take that action." *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)).

#### 1. *Constitutionally protected conduct*

Although prisoners' constitutional rights are "necessarily limited," it is "settled law that an inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Waterman v. Farmer*, 183 F.3d 208, 213 (3d Cir. 1999) (internal citations omitted). The filing of a lawsuit is constitutionally protected conduct. *See Cash v. Wetzel*, 8 F. Supp. 3d 644, 659, 2014 WL 1244048 (E.D. Pa. 2014) (citing *Mearin v. Vidonish*, 450 F. App'x 100, 102 (3d Cir. 2011)). Therefore, Khan has met this first element by filing his habeas petition.

3

       2.     *Adverse action*

Next, Khan must show that he suffered an adverse action. A prisoner-plaintiff satisfies this requirement by demonstrating that the adverse action "was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999)). In *Thaddeus-X*, the court "emphasize[d] that while certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions." 175 F.3d at 398.

Prison transfers can support a plaintiff's claim that an adverse action was taken against them. *See Rauser*, 241 F.3d at 333 (finding an adverse action where the plaintiff was denied parole, transferred to a distant prison where his family could not visit him regularly, and penalized financially); *see also Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 585 (D.C. Cir. 2002), ("Despite the fact that prisoners generally have no constitutionally-protected liberty interest in being held at, or remaining at, a given facility . . . the Bureau may not transfer an inmate to a new prison in retaliation for exercising his or her First Amendment rights.").

However, the Third Circuit has not decided whether the *threat* of a transfer is sufficient to show an adverse action. *Wilson v. Zielke*, 382 F. App'x 151, 153 (3d Cir. 2010). Relying on *Thaddeus-X*, the Sixth Circuit held that "the threat of an adverse action can satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct." *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (citing *Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009)). The Ninth Circuit has similarly recognized that "the mere threat of harm can be an adverse action, regardless of whether it is carried out because *the threat itself* can have a chilling effect." *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009) (emphasis added). In other words, "the power of a threat lies not in any negative actions eventually taken,

4

but in the apprehension it creates in the recipient of the threat." *Id.* at 1271; *see also Harbridge v. Reed*, No. 22-55861, 2024 WL 4719083, at *3 (9th Cir. Nov. 8, 2024).

Here, Khan has alleged that his impending transfer "is being used as a tool to silence, or at the very least hamper, [his] legal challenge." TRO at 6. The Court agrees that the threat of a transfer could deter a person of ordinary firmness from engaging in protected conduct. As Khan demonstrates in his TRO, a transfer away from family and unique educational opportunities have the ability to disrupt his rehabilitation. *See* TRO at 2-5. Therefore, Khan has likely met this element as well.

### 3. *Causal link*

Finally, Khan must show a causal link between the alleged action and the exercise of his constitutional rights. Khan can establish the third element of a *prima facie* case of retaliation by showing an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action. *Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016). Causation can be established from the evidence "gleaned from the record as a whole." *Id.* (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).

For purposes of a TRO, the Court finds that Khan has sufficiently alleged an unusually suggestive temporal proximity between his litigation and the impending transfer. On January 30, 2025, the Court ordered the Respondent in the Related Proceeding to respond to Khan's Petition within 45 days. D.E. 7 in the Related Proceeding. Just three weeks later—for the first time in the nine years he has been incarcerated—Khan was informed he would be transferred to an unknown facility. TRO, Ex. B ¶¶ 4-6. Khan alleges this timing is even more suspect when the Court accounts for the fact the Order was "served via certified mail, which took several days to reach the prison, and included federal holidays that further delayed delivery." TRO at 5.

As additional support that the transfer is pretextual, Khan points out that while the Bureau of Prisons ("BOP") "claims his transfer is part of a First Step Act incentive," Khan never requested a transfer (as is required under the relevant provision of the First Step Act), and in fact, previously informed his case manager he wanted to stay at FCI Fort Dix. *Id.* at 5-6. For the purposes of a TRO, Khan has sufficiently shown a causal connection between the filing of his habeas petition and notice of an impending transfer from his case manager just a few weeks later. Therefore, Khan has demonstrated a likelihood to prevail on the merits of his TRO.

### B. Irreparable Harm Absent Relief

The Court next considers whether Khan has demonstrated irreparable harm. To prevail, Khan must show he is "more likely than not to suffer irreparable harm absent the relief requested." *Jose M. C. v. Tsoukaris*, 467 F. Supp. 3d 213, 226 (D.N.J. 2020) (internal quotations omitted). "Constitutional harm is not necessarily synonymous with the irreparable harm necessary for issuance of a preliminary injunction." *Hohe v. Casey*, 868 F.2d 69, 73 (3d Cir. 1989). Nevertheless, the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

Khan alleges three primary harms associated with his transfer: (1) a significant disruption to his family support structure; (2) removal from a unique educational opportunity run through Princeton University and Mercer College available only at FCI Fort Dix; and (3) the loss of legal access. TRO at 2-6. Although the Court notes the potential impact of Khan's transfer in all three domains, it need not address them further because the Court determines that Khan's First Amendment rights were likely violated, which alone suffices to show irreparable harm. *Abu-Jamal v. Price*, 154 F.3d 128, 136 (3d Cir. 1998) (citing *Elrod*, 427 U.S. at 373).

6

### C. Balance of Equities and the Public Interest Both Favor the Movant

The district court must also take into account the possibility of harm to other interested persons from granting or denying the requested injunction, and the public interest.[2] *McGillvary v. Scutari*, No. 23-22605, 2024 WL 3759729, at *6 (D.N.J. Aug. 12, 2024) (citing *Oburn v. Shapp*, 521 F.2d 142, 152 (3d Cir. 1975)). This Court has previously recognized that "[t]he public interest will almost always favor the plaintiff, if the plaintiff demonstrates both a likelihood of success on the merits and irreparable injury." *Tillery v. Hayman*, No. 07-2662, 2008 WL 5416392, at *3 (D.N.J. Dec. 22, 2008) (citing *AT&T*, 42 F.3d at 1427 n.8). Having done both, the Court finds the public interest factor also weighs in Khan's favor. Furthermore, the Court cannot identify any harm to the BOP by allowing Khan to remain at FCI Fort Dix pending resolution of this matter. Therefore, the Court finds all four factors weigh in favor of Khan.

### D. PLRA Test

The Court finds that the requested relief—not being moved to another facility—meets all four elements of the PLRA test as well. The relief is narrowly drawn because it applies only to Khan and would require him to remain in the place he currently is located (and has been for the past nine years). Relatedly, it is the least intrusive means necessary to remedy this violation because it only requires the BOP keep Khan where he already is. The relief extends no further than necessary because the Court would keep Khan at FCI Fort Dix pending a full resolution of the matter. Finally, there is no adverse impact on public safety or the criminal justice system by keeping Khan at FCI Fort Dix. Therefore, Khan easily satisfies this test as well.

---

[2] When the Government is a party, the Court consolidates its analysis of the last two factors. *McGillvary v. Scutari*, No. 23-22605, 2024 WL 3759729, at *6 (D.N.J. Aug. 12, 2024) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

TROs are ordinarily aimed at temporarily preserving the status quo. *Hope v. Warden York Cnty. Prison*, 956 F.3d 156, 160 (3d Cir. 2020). Allowing Khan to stay at Fort Dix pending a full briefing of the issues present in this matter does just that.

**IT IS**, therefore, on this **12th** day of March 2025,

**ORDERED** that the Court will **GRANT** Khan's TRO, D.E. 1; and it is further

**ORDERED** that Defendant Rachel Thompson, Warden of FCI Fort Dix, shall not transfer Khan to another facility pending resolution of this matter; and it is further

**ORDERED** that in the event Khan has already been transferred to another facility, Thompson shall arrange for Khan to be immediately returned to FCI Fort Dix; and it is further

**ORDERED** that the Clerk of Court shall supply to Khan an Application to Proceed IFP Form, DNJ-Pro Se-007-A (available at https://www.njd.uscourts.gov/forms/prisoner-applying-proceed-forma-pauperis-civil-rights-case); and it is further

**ORDERED** that Khan is granted provisional *in forma pauperis* ("IFP") status, and to keep such status, Khan shall return to this Court a completed IFP application to the Clerk of the Court, at Martin Luther King Building and U.S. Courthouse, 50 Walnut Street, Newark, NJ, 07102, with **30 days** from the date of entry of this order; and it is further

**ORDERED** that the Clerk of Court shall supply to Khan a Motion for Pro Bono Counsel Form for a Prisoner in a Civil Rights case (available at https://www.njd.uscourts.gov/forms/motion-pro-bono-counsel-prisoner-civil-rights-case); and it is further

**ORDERED** that should Khan seek to have pro bono counsel appointed, he shall return to this Court a completed Motion for Pro Bono Counsel to the Clerk of the Court, at Martin Luther King Building and U.S. Courthouse, 50 Walnut Street, Newark, NJ, 07102, with **30 days** from the date of entry of this order; and it is further

**ORDERED** that Defendant shall respond to Khan's TRO within **7 days** of the date of this Order; and it is further

**ORDERED** that Khan may reply to Defendant within another **7 days** of the date of the response; and it is further

**ORDERED** that the U.S. Marshals shall serve a copy of this Order on Defendant on an expedited basis; and it is finally

**ORDERED** that the Clerk of the Court shall serve a copy of this Order on Plaintiff by regular U.S. mail.

　

*[signature]*
Evelyn Padin, U.S.D.J.